STATE of Wisconsin, Plaintiff-Respondent,

v.

Raymond Walter WEBER, Defendant-Appellant.†

Court of Appeals

*No. 85-2261-CR. Submitted on briefs August 31, 1988.—
Decided October 19, 1988.*

(Also reported in — N.W.2d —.)

† Petition to review pending. This petition was not disposed of at the time the volume went to press. Its disposition will be reported in a later volume.

 ▪

On behalf of the defendant-appellant, the cause was submitted on the briefs of *Richard D. Martin,* assistant state public defender.

On behalf of the plaintiff-respondent, the cause was submitted on the brief of *Donald J. Hanaway,* attorney general and *Barry M. Levenson,* assistant attorney general.

Before Scott, C.J., Brown, P.J., and Nettesheim, J.

BROWN, P.J. When we first decided this case, we were obligated to follow the court of appeals' decision in *State v. Koput,* 134 Wis. 2d 195, 396 N.W.2d 773 (Ct. App. 1986), *rev'd,* 142 Wis. 2d 370, 418 N.W.2d 804 (1988). In that case, the court of appeals held that when prejudicial error has been found in the mental responsibility phase of a bifurcated criminal trial, there must be a new trial on the guilt phase as well. The court of appeals read the law as requiring one continuous trial. After our initial decision in this instant case, the supreme court reversed the court of appeals in *State v. Koput,* 142 Wis. 2d 370, 418 N.W.2d 804 (1988), holding that where the error is only in the

responsibility phase, there is no reason for retrial of the guilt phase. Subsequently, the supreme court accepted the state's petition for review of this case, summarily vacated our decision, and remanded the matter to us for further consideration in light of its opinion in *Koput.*

On remand, Weber argues that this case is distinguishable from *Koput.* In *Koput,* the defendant claimed error in the mental responsibility phase. Weber reads the supreme court's decision to say that when a defendant claims error only as to the second phase of a bifurcated trial, then it would be an unjustifiable "windfall" to afford that person a new trial on the first phase when the defendant has never claimed to have had a problem with the first phase.

Weber argues, however, that except for the narrow holding in *Koput,* the law still requires one continuous jury trial on both phases; and when the defendant's claim is that this right has been withheld, then this claim for relief is different than an assertion of error in the second phase of a bifurcated trial.

Weber points to the facts in his case as being indicative of the kind of situation where the right to a continuous jury trial is the focus of debate rather than error in phase two of a bifurcated trial. In his case, he asked for a trial on the guilt phase and the mental responsibility phase. For some reason, the trial court never afforded him the second phase of his trial after the jury came back with a guilty verdict on the first phase. The trial court either erroneously believed that Weber had not properly preserved his plea of not guilty by reason of mental disease or defect or it simply neglected to afford him the second phase. In any event, there never was a trial on the second phase. Weber argues that the trial court prevented him from

having his continuous trial before one jury; he claims that he is not arguing that an error occurred in the second phase as did Koput.[1]

Weber asserts that he would not be receiving the "windfall" that the supreme court was concerned about avoiding in *Koput*—a new trial altogether when only an error in the second phase is claimed. Weber cites the following for the proposition that when the narrow concern of the supreme court in *Koput* is not present, then a single continuous trial is warranted. The *Koput* court stated:

> That is not to say that a sequential trial before a single jury is not usually appropriate. In the interests of judicial administration, time and resources will be conserved by initially using a single jury sequentially.

*Id.* at 398–99, 418 N.W.2d at 816. Weber concludes that he is still clearly entitled to one complete bifurcated trial when the peculiar fact situation as found in *Koput* is not present.[2]

We read Weber's interpretation of the supreme court's decision in *Koput* as a kind of estoppel theory—if a defendant claims error on only one part of a bifurcated trial, then he or she is estopped to have a new trial on both parts. We disagree, however, that an estoppel idea was the message that the supreme court is sending. Rather, the supreme court's message is

---

[1]The state argues that Weber's claim of error is still a claim regarding a phase two error. We agree, but indulge Weber's proposed argument to further develop the supreme court's holding in *Koput*.

[2]Our reading of *Koput* is that there is no *right* to one single and complete continuous trial in Wisconsin. Rather, it is a worthy goal from a judicial resource standpoint.

that if there is no prejudicial error in the first phase, it would be contrary to good use of judicial time and resources to have a new trial on that phase. Thus, it is not whether the defendant claims error in the second phase such that the claim estops him or her from gratuitously receiving a new trial on the first, but whether the remand is necessary to correct a prejudicial error in the first phase as well as phase two which is the supreme court's focus. This much was made clear in *Koput,* when the court wrote:

> We conclude ... in the exercise of our supervisory authority over courts, that, where the error is only in the responsibility phase of the bifurcated trial, there is no reason whatsoever for concluding that there should be a retrial of the *error-free guilty determination.*

*Id.* at 374, 418 N.W.2d at 806 (emphasis added).

We determine that whether the defendant is limiting his claim to one involving an error in phase two or whether the claim is that he did not get the one continuous jury trial that he expected to receive, the windfall would be the same—if the first phase was completed without prejudicial error, then it would be a windfall to have that first phase tried anew. This is what the supreme court meant for Wisconsin courts to avoid, and that is the holding by which we are bound.

The state has conceded error in the trial court's mishandling of the second phase of Weber's trial. We agree. We reverse and remand but with directions that the trial on remand be limited to a phase-two proceeding.

Weber argues that he is nonetheless entitled to a new trial because he was never afforded a competency

hearing prior to trial even though he requested one. He claims that there was "reason to doubt" his competency prior to trial. He therefore claims that since he was not afforded a hearing, his ability to assist in his own defense was never assessed and that the only adequate remedy is a new trial on the guilt phase as well as the insanity phase. We disagree, for we find that the record reveals no evidence sufficient to raise bona fide doubts as to Weber's competency to proceed.[3]

One who lacks mental capacity to understand the nature and object of the proceedings against him, to consult with counsel, and to assist in his own defense may not be subjected to a trial. *Drope v. Missouri,* 420 U.S. 162, 171 (1975). Competency proceedings must be initiated whenever there is reason to doubt a defendant's competency to proceed. Sec. 971.14(1)(a), Stats. However, extensive hearings and psychiatric examinations are not prerequisites to every case. *State v. McKnight,* 65 Wis. 2d 582, 595, 223 N.W.2d 550, 557 (1974). Before competency proceedings are required, evidence giving rise to a reason to doubt competency must be presented to the trial court. *Id.* Whether there is evidence giving rise to a reason to doubt competency is a question left to the sound discretion of the trial court. *See id.* at 596, 223 N.W.2d at 557.

Weber's counsel initially moved for a competency hearing during the preliminary hearing before Judge Keppler, on the grounds that he had some question

---

[3]If the record had revealed doubts, we would not remand for a new trial but rather would remand for a hearing to determine whether a meaningful *nunc pro tunc* competency hearing could be held. *State v. Haskins,* 139 Wis. 2d 257, 267, 407 N.W.2d 309, 313 (Ct. App. 1987).

regarding Weber's competency. The court denied the motion, stating that it could be renewed before Judge Bolgert, who would be conducting the remainder of the proceedings, and suggested that evidence of incompetency be presented to the court at that time. The motion was renewed before Judge Bolgert during the arraignment. The court denied the motion, citing a lack of "factual evidence" in support of the motion. And again, the court left open the opportunity to present factual evidence at a later time.

The court next turned to defense counsel's motion to withdraw, and asked defendant if he was aware of the motion. The following colloquy ensued:

> THE COURT: ... Do you know that, Mr. Weber, that Mr. Alpert has requested this court that he be allowed to withdraw as your lawyer? Do you know that? Did you know about that?
>
> DEFENDANT WEBER: I hear several different voices all the time and—
>
> THE COURT: Now you are hearing my voice. Now listen to my voice. You understand your lawyer has asked to withdraw from this case?
>
> DEFENDANT WEBER: All the chickens flew the coop.
>
> THE COURT: You just keep putting on that little act, Mr. Weber.

Defense counsel obliquely raised the issue of Weber's competency again on the day of trial. He offered records proving defendant's mental commitment for ten and a half months during 1977, either to support a plea of not guilty by reason of mental disease or defect, or to support a motion for competency hearing. The court declined review of the proffered

records and peremptorily denied the motion for competency hearing, stating: "I recall Mr. Weber when he initially appeared in court had made that request and the court at that time denied it. Frankly I think it's a delaying tactic and there is nothing for this court to base it on. Your motion is denied."

> Discretion is not synonymous with decision-making. Rather, the term contemplates a process of reasoning.... "[T]here should be evidence in the record that discretion was in fact exercised and the basis of that exercise of discretion should be set forth."
> ... In cases where the trial court judge has failed to set forth his reasons, we examine the record *ab initio*.... Unless there is evidence that the trial judge has undertaken a reasonable inquiry and examination of the facts as the basis of his decision, his decision will be disregarded by this court. Such a decision on its face shows an abuse of discretion for failure to exercise discretion.

*McCleary v. State,* 49 Wis. 2d 263, 277–78, 182 N.W.2d 512, 519–20 (1971).

We view the trial court's peremptory denial of the motion for competency hearing as lacking the reasoned exposition that would demonstrate exercise of discretion. We have therefore reviewed the record *ab initio* to determine whether reason to doubt defendant's competency was shown.

Weber directs our attention to four factors that he claims raise a "reason to doubt" competency under sec. 971.14, Stats. First, he points to Attorney Alpert's[4] statement that he had "some question" regard-

---

[4]Attorney Alpert was Weber's first court-appointed lawyer. He withdrew at the arraignment for reasons having nothing to do with the relationship between himself and defendant.

ing defendant's competency. Second, he points to defendant's demeanor, specifically his silence at the initial appearance and his response to the trial court's questions at arraignment regarding defense counsel's motion to withdraw. Third, he points to the ten and one-half months commitment in 1977. Fourth, he points to defense Attorney Rusboldt's[5] assertion that defendant was, at the time of trial, under psychiatric care and receiving medication.

Standing alone, these factors would not necessarily result in a reason to doubt competency and viewed within the context of the record as a whole, we do not find the aggregate of the factors persuasive either. First, the trial court assessed defendant's demeanor at the arraignment as "an act." Assessment of a witness' demeanor is peculiarly within the province of the trial court, which, unlike the appellate tribunal, actually sees and hears the witnesses.

> Face to face with living witnesses the original trier of the facts holds a position of advantage from which appellate judges are excluded. In doubtful cases the exercise of his power of observation often proves the most accurate method of ascertaining the truth.... How can we say the judge is wrong? We never saw the witnesses.

*Maggio v. Fulford,* 462 U.S. 111, 118 (1983).

Second, an attorney's statement that he questions his client's competence is not a controlling factor for initiating competency proceedings. *Drope,* 420 U.S. at 177 n.13. In this case, the attorney raising the question couched it in highly equivocal language.

---

[5]Attorney Rusboldt was defendant's third and last court-appointed attorney, and the attorney with whom defendant had the most contact.

Neither of defendant's subsequent attorneys expressed reservations on his own behalf. To the extent that an attorney's expressed reservations regarding competence are factors for consideration, the absence of such expressions is also relevant.

Third, while prior mental illness is a relevant factor affecting determination of reason to doubt competency, the issue is whether defendant is competent at the time of the proceedings, not at some time in the distant past. "The test must be whether he has sufficient *present* ability to consult with his lawyer with a reasonable degree of rational understanding—and whether he has a rational as well as factual understanding of the proceedings against him." *State ex rel. Haskins v. Dodge County Court,* 62 Wis. 2d 250, 265, 214 N.W.2d 575, 582 (1974) (emphasis added). No evidence of present inability was offered to the trial court. Defense counsel's assertion that Weber was presently being treated indicates that a doctor's assessment of Weber's mental status at the time was available as supporting evidence for counsel's assertion, yet no such evidence was ever made available to the court. This suggests that whatever the reason for treating Weber, if he was in fact under treatment, it did not impact on his competency to assist in the proceedings against him.

Not only did Weber fail to offer evidence of incompetence at the time of proceedings, the record before the trial court was indicative of Weber's ability to assist in his own defense. The record indicates that during the preliminary hearing, Weber was alert to the presence of witnesses in the courtroom who were bound by a sequestration order. He was aware of other rights and rules as well. During a hearing on defense counsel's motion to withdraw, that attorney stated:

"Mr. Weber has informed me before that he wished to remain silent."

Although Weber had three attorneys, only the first expressed any reservations on his own behalf regarding Weber's competency. This attorney produced no substantiating records nor stated any specific reasons that he questioned competence. Attorney Rusboldt, whose contact with defendant was the most extensive, raised no doubts on his own behalf.

A trial court is entitled to conclude that there is no reason to doubt defendant's competency to proceed based in part upon its firsthand observations of the defendant. *State v. Haskins,* 139 Wis. 2d 257, 266, 407 N.W.2d 309, 313 (Ct. App. 1987). When, however, expert testimony or medical reports counter the court's impression, we have held that further proceedings are necessary. *Id.*

Here, we find no reliable evidence raising a bona fide doubt as to competency. *See State v. Johnson,* 133 Wis. 2d 207, 223–24, 395 N.W.2d 176, 184 (1986). The suggestion of a defendant's incompetency must be supported by facts giving rise to doubt. *McKnight,* 65 Wis. 2d at 595, 223 N.W.2d at 557. We simply do not find those facts present here. The record instead reveals a defendant whose most involved counsel expressed no doubts as to defendant's competency.[6]

---

[6]At sentencing, in fact, Attorney Rusboldt stated:

> What I have found is a client of some intelligence who has asked me to do things which I have refused to do, motions which I filed or recommended against his doing, that he's listened to my advice, that he's demanded of me that I give him good reason, and I have done so, and if he's satisfied with the reason he goes along with it.

Evidently, counsel could not substantiate a reason to doubt competency based on Weber's alleged psychiatric treatment; certainly, he never offered anything from the treating physician, or suggested that the treating physician doubted competency. Hence, we find nothing in the record countering the trial court's determination that Weber's brief and isolated display of inappropriate behavior at arraignment was "an act."

In sum, our independent review of the record leads us to hold that no reason to doubt Weber's competency was presented to or displayed before the trial court. Therefore, competency proceedings were not required, and the integrity of the trial is not in question.

*By the Court.*—Judgment affirmed in part, reversed in part and cause remanded with directions.