State of Wisconsin, Plaintiff-Respondent,
v.
D. Ramee K. Fulani, Defendant-Appellant.
No. 03-2276-CR.
Court of Appeals of Wisconsin.
Opinion Filed: March 16, 2004.
¶ 1. FINE, J. D.
Ramee K. Fulani appeals from a judgment entered on a jury verdict convicting him of battery, see Wis. Stat. § 940.19(1), and from the trial court's order denying his motion for postconviction relief. He claims that his trial lawyer gave him prejudicially deficient representation in two respects. First, he contends that his lawyer should have sought a competency hearing for him. See Wis. Stat. § 971.14. Second, he claims that his trial lawyer's closing argument to the jury was too perfunctory. Fulani also claims that the trial court erroneously denied his motion to adjourn the trial. We reverse on the competency issue and do not address the others. See Gross v. Hoffman, 227 Wis. 296, 300, 277 N.W. 663, 665 (1938) (only dispositive issue need be addressed).

I.
¶ 2. There is little doubt in the record but that Fulani is at least borderline mentally ill. Indeed, he was charged with the battery for which he was convicted because he hit, according to the criminal complaint, "with an open hand," the lawyer who was his court-appointed conservator following a dispute over Fulani's money that the conservator was handling.
¶ 3. Fulani acted strange from the start of the battery proceedings. His initial appearance was scheduled for May 10, 2002. Although in the courthouse, and, apparently, in the back of the courtroom, he did not "appear," and a warrant was issued for his arrest. He was immediately taken into custody on the warrant. On May 11, he was brought into court, and the court commissioner asked Fulani's lawyer whether she had "any concerns about his competency today." She said that she did not, and added that "[o]ne of the jailer bailiffs was indicating that she had an appointment with him to see a social worker after the hearing today." When, at the end of the brief initial-appearance hearing, the court commissioner ordered Fulani to "have no contact with" the conservator, however, Fulani's response to the commissioner was: "There you go. Where's my money? You listening, sir?" The commissioner ignored Fulani's comments.
¶ 4. After several non-substantive court hearings, Fulani next appeared in court on September 25, 2002, for what was termed a "final pretrial conference." Fulani's lawyer told the trial court that he wanted Fulani to enter a plea of not guilty by reason of, as phrased by the lawyer, "mental deficiencies or defect," but that Fulani demurred. The trial court asked the lawyer whether Fulani was able to "proceed at this time." The lawyer responded that he believed that Fulani was competent, and, answering the trial court's follow-up question of whether Fulani was "able to assist in his own defense," replied "[h]e has been thus far." In connection with the lawyer's suggestion that Fulani plead not guilty by reason of mental disease or defect, the lawyer told the trial court: "There is some history of mental health treatment upon which to base such an evaluation." When the trial court tried to ascertain whether Fulani understood what his lawyer had said, Fulani's response was again problematic:
THE COURT: Sir, did you understand what your lawyer just said to me?
THE DEFENDANT: A simple yes or no.
THE COURT: Yes and no.
THE DEFENDANT: A simple yes or no answer will do.
Fulani's lawyer indicated that Fulani was "reading the sign." According to the State's brief in opposition to Fulani's motion for postconviction relief, the trial court had "[o]n his bench, facing the parties and the gallery ... a sign that reads `A simple yes or no answer will do.'" The trial court continued.
THE COURT: Okay. Then give me the yes or the no.
THE DEFENDANT: Yes, sir, I do know.
THE COURT: Do you understand?
THE DEFENDANT: Not about his objection, no.
THE COURT: What your lawyer is telling me is that perhaps there ought to be what we call in the law a special plea relative to your mental condition. Now, if the examiner found during an examination that you could be released because of a mental difficulty, you would be, you see, or you would be released to treatment.
THE DEFENDANT: That would be a crutch. I got one already.
THE COURT: You don't care to enter any special plea, is that correct?
THE DEFENDANT: Not at this time, Your Honor.
¶ 5. The case was tried before a jury and a different judge in early October, 2002. After the State rested, Fulani's lawyer told the trial court that Fulani was not going to testify. The trial court asked Fulani whether that was what he wanted to do. Fulani's responses to the trial court's first several questions appear appropriate. Those responses veered, however, when the trial court asked whether Fulani's decision not to testify was the result of "any pressure on you or ... any threats or promises."
THE DEFENDANT: Coerced?
THE COURT: Right.
THE DEFENDANT: Not yet.
THE COURT: Has anybody promised you anything, said if you testify or don't testify they will give you something?
THE DEFENDANT: Looking forward to something? Want money? That's why I'm here. I can't deal with this individual.
The rest of the colloquy appears to be back on track, and Fulani's lawyer told the trial court that he believed that Fulani's decision to not testify was made "freely and voluntarily." The defense called no witnesses.
¶ 6. The jury convicted Fulani, and the trial court placed him on probation. Fulani refused to cooperate with the probation authorities, however, and, in assessing whether his probation should be revoked, the assigned administrative law judge opined in a letter to the trial court that she had "reason to doubt Mr. Fulani's competency based upon information provided from a psychiatric social worker and information from the [probation] agent's file." The administrative law judge asked the trial court to determine whether Fulani was competent. The trial court ordered a competency assessment, which was to be done at the Milwaukee County House of Corrections, where Fulani was then in custody. This assessment could not be completed, however, because Fulani refused to cooperate, and the responsible physician recommended that Fulani's competency be assessed "on an inpatient basis at one of the State psychiatric institutes." Such an assessment was not done, however, because, acceding to a recommendation by the Wisconsin Department of Corrections, the trial court modified Fulani's sentence to "time served."

II.
¶ 7. Wisconsin Stat. § 971.13(1) codifies a paradigm constitutional principle: "No person who lacks substantial mental capacity to understand the proceedings or assist in his or her own defense may be tried, convicted or sentenced for the commission of an offense so long as the incapacity endures." See State v. Byrge, 2000 WI 101, ¶¶ 26-29, 237 Wis. 2d 197, 213-215, 614 N.W.2d 477, 484-485. The legislature recognized that a determination of "capacity" to understand legal proceedings may be nuanced beyond the general ken of mind-science laypersons. Accordingly, it enacted comprehensive procedures that a court must follow, Wis. Stat. § 971.14(2)-(6), "whenever there is reason to doubt a defendant's competency to proceed," Wis. Stat. § 971.14(1). Stated another way, by recognizing that in penumbral situations neither the judge nor any of the lawyers can make a competency determination without mind-science assistance, resort to that assistance is triggered whenever there is a belief that a defendant may not be sufficiently lucid to not only understand the charge but also to assist in its defense. See Byrge, 2000 WI 101, ¶ 30, 237 Wis. 2d at 215, 614 N.W.2d at 485-486. This is especially true where, as apparent here, the defendant seems to fade in and out. The ultimate competency issue, however, is "a judicial inquiry, not a medical determination." Id., 2000 WI 101, ¶ 31, 237 Wis. 2d at 215, 614 N.W.2d at 486. Thus, where a trial court finds, based on its perception of the defendant's demeanor, that the defendant is malingering or faking incompetency, the trial court need not hold a competency hearing. State v. Weber, 146 Wis. 2d 817, 826, 433 N.W.2d 583, 586 (Ct. App. 1988); see also Byrge, 2000 WI 101, ¶ 45, 237 Wis. 2d at 227, 614 N.W.2d at 491 (trial court's determination whether defendant is competent will be upheld on appeal unless clearly erroneous).
¶ 8. Wisconsin Stat. § 971.14(1) imposes two burdens. First, a trial court must sua sponte order a competency hearing whenever the trial court has "`reason to doubt' a defendant's competency." State v. Johnson, 133 Wis. 2d 207, 219, 223, 395 N.W.2d 176, 182, 184 (1986). Second, a defense lawyer must apprise the trial court that there may be reason to doubt a defendant's competency whenever the lawyer has sufficient information to reach the "reason to doubt" threshold. Id., 133 Wis. 2d at 220, 395 N.W.2d at 182. If the lawyer does not do so, he or she has, per se, given the defendant prejudicially deficient representation. Id., 133 Wis. 2d at 220-224, 395 N.W.2d at 182-184. Here the only trial-court determination on competency was the trial court's decision denying Fulani's motion for postconviction relief-the competency issue was never raised before trial and that is the crux of Fulani's complaint and appeal.
¶ 9. Passing the question of whether the record in this case as it existed when Fulani's trial started was sufficient to require the trial court to order, sua sponte, a competency evaluation, we, as do the parties, examine the issue of Fulani's competency in an ineffective-assistance-of-counsel context. The key to the analysis is succinctly stated by Johnson: "When a defense counsel fails to bring evidence of a client's incompetence to the [trial] court's attention, the court is deprived of the evidence necessary to determine whether a competency hearing is required." 133 Wis. 2d at 223, 395 N.W.2d at 184. Thus, our inquiry here is simple: did Fulani's lawyer not apprise the trial court of the "evidence" of Fulani's "incompetence" that we have recounted? There is no dispute but that he did not. Thus, the trial court did not assess that evidence to see whether to order a pre-trial competency hearing.
¶ 10. In its written decision denying Fulani's motion for postconviction relief, the trial court opined that none of the information presented by postconviction counsel raised any questions as to whether Fulani was competent at the time of his trial. The trial court relied in large measure on Weber, where the defendant's history of mental illness was in that case insufficient to trigger the procedures set out in Wis. Stat. § 971.14. In that case, however, the trial court specifically found that Weber was faking it. Weber, 146 Wis. 2d at 824, 826, 433 N.W.2d at 586. None of the judicial officers involved in this case, including the trial court from whose order this appeal is taken, have even hinted, no less found, that Fulani's sporadic failures of lucidity were, as in Weber, an "act."
¶ 11. In light of the evidentiary record in this case-both pre-trial, mid-trial, and post-trial-we conclude that the trial court's postconviction finding that there was no reason to believe that Fulani was incompetent, at least at times, was clearly erroneous. Accordingly, we must reverse the trial court's order denying Fulani's motion for postconviction relief, and, as mandated by Johnson remand for either a retrospective determination of whether Fulani was competent to go to trial, or, if that is not possible, vacatur of the judgment and a new trial. Id., 133 Wis. 2d at 224-225, 226-227, 395 N.W.2d at 184-185. If, following a retrospective determination of Fulani's competency, it is determined that he was competent, the judgment will stand. If it is determined that he was not competent, then the judgment must be vacated, and the case handled, nunc pro tunc, as required by Wis. Stat. § 971.14.
By the Court.  Order reversed and cause remanded with directions.