**COURT OF APPEALS**
**DECISION**
**DATED AND FILED**

**November 3, 2022**

Sheila T. Reiff
Clerk of Court of Appeals

**NOTICE**

This opinion is subject to further editing. If published, the official version will appear in the bound volume of the Official Reports.

A party may file with the Supreme Court a petition to review an adverse decision by the Court of Appeals. *See* WIS. STAT. § 808.10 and RULE 809.62.

**Appeal No. 2020AP275-CR**

**STATE OF WISCONSIN**

Cir. Ct. No. 2018CF12

**IN COURT OF APPEALS**
**DISTRICT IV**

STATE OF WISCONSIN,

    PLAINTIFF-RESPONDENT,

V.

DONALD L. WHITE,

    DEFENDANT-APPELLANT.

APPEAL from a judgment of the circuit court for Grant County: CRAIG R. DAY, Judge. *Affirmed*.

Before Blanchard, P.J., Fitzpatrick, and Graham, JJ.

¶1 BLANCHARD, P.J. Donald White appeals a judgment of conviction resulting from a jury verdict of guilty on one count of assault by a

prisoner in violation of WIS. STAT. § 946.43(2m)(a) (2019-20).[1] White contends that his conviction violated his constitutional right to due process and his statutory rights because he was not competent to stand trial.[2] Before trial, the circuit court appointed an examiner to evaluate White's competency to stand trial under WIS. STAT. § 971.14(2)(a), and that examiner was the only expert to offer testimony on White's competency. The examiner provided "clinical findings" and "facts and reasoning," along with her opinion that White was competent. *See* § 971.14(3)(b), (c), (e). At the same time, she took the position that she could not reach the ultimate conclusion that he was competent "to a reasonable degree of professional certainty." The court concluded that the examiner's ultimate conclusion of competency was inadmissible because it was not offered at the required level of certainty, but the court nonetheless determined based on all of the information before it—including the examiner's "clinical findings" and "facts and reasoning"—that White was competent to stand trial.

¶2 White argues that the circuit court did not follow a requirement of WIS. STAT. § 971.14 in reaching its competency determination. Specifically, White contends that under § 971.14 the court was required to order additional examinations of White's competency because the only examiner to evaluate White

---

[1] All references to the Wisconsin Statutes are to the 2019-20 version unless otherwise noted.

[2] *See State v. Byrge*, 2000 WI 101, ¶27, 237 Wis. 2d 197, 614 N.W.2d 477 ("Defendants who are tried and convicted while legally incompetent are deprived of a due process right to a fair trial." (citing *Drope v. Missouri*, 420 U.S. 162, 172 (1975); *Pate v. Robinson*, 383 U.S. 378, 378 (1966))); WIS. STAT. § 971.13(1) ("No person who lacks substantial mental capacity to understand the proceedings or assist in his or her own defense may be tried, convicted or sentenced for the commission of an offense so long as the incapacity endures.").

in this case could not testify to the ultimate conclusion to a reasonable degree of professional certainty.

¶3      We conclude that, in these circumstances, WIS. STAT. § 971.14 does not preclude a circuit court from ruling on a defendant's competency in the absence of an expert's ultimate conclusion, offered to reasonable degree of professional certainty, that the subject is competent. We further conclude that the court here did not erroneously exercise its discretion or clearly err in failing to order additional examinations. Accordingly, we affirm.

## BACKGROUND

¶4      In January 2018, the State charged White with one count of assault by a prisoner in violation of WIS. STAT. § 946.43(2m)(a), based on the allegation that while he was confined in a state prison he expelled saliva at a corrections officer.

¶5      We now summarize background that includes references to whether White would be represented by counsel in the circuit court and if so who would represent him. Although White does not challenge the court's decisions on these topics, these references provide context to understanding the only issue on appeal: White's challenge to the court's ruling that he was competent to stand trial.

¶6      White appeared at his initial appearance by video, without counsel. When questioned about representation by the circuit court, White said that he had not contacted the public defender's office. The court told White that the court would ask the public defender's office to "reach out to [White] given that [he was] incarcerated." The court adjourned the hearing to give White time to obtain counsel.

3

¶7    The public defender's office informed the circuit court that White was "adamant" that "he [did] not want a public defender" and "want[ed] the court to appoint an attorney or he will represent himself."

¶8    At the next hearing in the case, White (still incarcerated) again appeared by video and without counsel. White asked the circuit court if the court was "the president of the United States, Abraham Lincoln." The court told White it was not, and that it understood White did not want a public defender. White agreed, and requested that Eleanor Roosevelt be appointed as his attorney. The court indicated that it would not appoint an attorney, and told White that he was eligible for a public defender. When White repeated the request that the court appoint Eleanor Roosevelt, the court responded that she was deceased, and White replied, "Well, bring her back." When the court explained that it could not help White with impossible requests, White hung up the phone he had been using to verbally communicate, but remained visible via video to those in the courtroom. The court said on the record that White's "body language" suggested that he had "disengage[d] from [the] conversation." The court encouraged White to obtain a public defender, and indicated that if he did not do so he would waive the right to counsel for purposes of the preliminary hearing.

¶9    White appeared in person at the preliminary hearing after he was transported to the courtroom from his place of incarceration. The court attempted to engage with White in a colloquy about the advantages of being represented by

counsel and the disadvantages of proceeding without counsel.[3] White largely declined to participate in this colloquy or verbally respond in general, except to say that Eleanor Roosevelt was his "payee" and that if the court had "something to say to [White], [it should] tell her."

¶10    Before the circuit court ordered the matter bound over, the court noted that, in order to allow White to proceed without counsel, the court had to determine that he was competent to represent himself. The court noted White's references to deceased famous people as if they were alive. It expressed concern as to whether White was "oriented to time and place"; the court said it had "reason to doubt … White's competency" to stand trial. As a result, the court ordered the appointment of an examiner to "examine and report upon [White's] condition," that is, White's status as being competent or incompetent.[4]  *See* WIS. STAT. § 971.14(2)(a).

---

[3] The circuit court also addressed the fact that correctional officers "apparently" "had to forcibly put [White] in a transport van" to get him to the courtroom that day. The court informed White that he had the right to be present at certain proceedings, but that the court would not order that White be forcibly brought to court because that presented safety issues. The court repeatedly explained that, if White did not voluntarily come to court for proceedings, he would be deemed to have given up his right to be present. White did not respond to the court's inquiries and prompts on this topic. White does not raise an issue on appeal regarding his transports to court or his presence in or absence from the courtroom for hearings.

[4] The circuit court told White that an examiner would "attempt to communicate with you to learn about you and try to help you. If you don't respond then the competency examiner will review your records and gain information by other means." Just as the court told White that he could change his decisions to reject counsel and refuse to cooperate with his transports to hearings, the court further explained: "If you don't talk to the competency examiner but then change your mind and want to, you just let somebody know and I'll send that person back to talk to you." The court also said:

> [W]e're not going to have the examiner spend a lot of time trying to interview Mr. White. If Mr. White wants to interact with the examiner, that would be good. If he does not, the examiner will attempt to glean information from other sources.

¶11    The examiner filed a written report indicating that she had gone to the institution where White was incarcerated and attempted to engage with him for one hour.  The report stated that their conversation was "very unproductive," that White's responses to the examiner's questions were "outlandish," and that he behaved in a "theatrical" manner.  According to the examiner, White refused to cooperate with her attempts to administer standardized tests designed to assess competency, and for that reason she ended the interview.

¶12    Turning to sources of information other than voluntary disclosures or test-taking by White, the report summarized White's history of prior mental health and criminal defendant competency evaluations.  Each prior examination of White's competency to stand trial ultimately resulted in an examiner's opinion to a reasonable degree of professional certainty that White was competent, and there were previous findings of White feigning mental illness.  White had been diagnosed with antisocial personality disorder and had a history of behavioral issues, but "ha[d] no known history of mental illness, and ha[d] never been prescribed psychotropic medications."

¶13    The report concluded with what might be called the examiner's informal opinion, which was that White "does not presently lack substantial mental capacity to understand the pending proceedings or be of assistance in his defense."  This informal opinion was based on the following inferences, "[g]iven [White's] noncooperation":   (1) in all five prior evaluations of White's competency, an examiner determined that he was competent, with three of these determinations following inpatient examinations; (2) there was "no indication … that Mr. White suffers from a major mental illness"—his "[b]ehavioral issues … do not appear out of his control"; (3) White demonstrated an "ability to self-advocate" "through coherent communication" to staff through request forms; and

6

(4) White had "prior experience … in the role of defendant" in criminal cases. The examiner also stated, however, that due to White's lack of "cooperation" she could not offer the ultimate conclusion that he was competent "to a reasonable degree of professional certainty." The report also noted that it is possible for "malingering" to coexist with incompetency and that ten years had passed since White's most recent competency evaluation.[5]

¶14 The circuit court held a status conference following the filing of the report. White took the position at the status conference that he was not competent. This position placed the burden on the State to prove White's competency "by the greater weight of the credible evidence." *See* WIS. STAT. § 971.14(4)(b). The prosecutor took the position that "there[ was] a problem … proceeding directly to a hearing" because the current examiner's report did not reach a conclusion to a reasonable degree of professional certainty. The court ruled that if the examiner could not offer an ultimate conclusion about competency "to a reasonable degree of professional certainty" then the conclusion would not be admissible. The court further reasoned, however, that it could consider "previous evaluations" "detailed" in the current report, in addition to "the details" of the examiner's "observations."

¶15 At the competency hearing, the examiner testified consistently with the contents of her report. She repeated her informal opinion that White was competent to proceed to trial, but that she could not offer that as an ultimate conclusion to a reasonable degree of professional certainty. White, representing himself, did not question the examiner but made arguments disputing the

_____

[5] *See Malinger*, BLACK'S LAW DICTIONARY (11th ed. 2019) ("To feign illness or disability, esp. in an attempt to avoid an obligation ….").

examiner's opinion and her qualifications. White further alleged that he had qualified to receive Social Security insurance benefits due to mental illness at some point after his release from prison in 2013, which he said undermined the examiner's testimony that he did not have a prior mental illness diagnosis. The court asked White again if he wanted an attorney, in order to assist in retrieving and submitting to the court records of a mental health diagnosis related to insurance benefits, and White continued in his position of declining counsel.

¶16 The circuit court and White then engaged in a lengthy exchange regarding the role of the prosecutor and court in his criminal case. They also discussed topics that included the nature of the court's task in determining White's competency. White said the prosecutor and the court were both "murderers."

¶17 In the discussion below, we provide additional details regarding the examiner's report and testimony, in addition to the circuit court's opportunities to observe and interact with White in hearings leading up to the court's competency ruling.

¶18 The court explained that it would operate from the assumption that White suffered from some kind of mental illness, but that it nonetheless determined that White was competent to stand trial. The court reasoned as follows, addressing its remarks directly to White:

> You are clearly oriented to time and place and person. You are clearly intelligent. You are clearly articulate. You clearly have a grasp of history and culture and sociology and a grasp of a lot of things you need to know.[6]…

---

[6] Related to this finding, earlier in the hearing, during the court's exchange with White on a variety of topics, the court said:

(continued)

8

> You may well have a mental illness, but … not such [that it] prevents you from standing trial in this case.  I find that you know that [the prosecutor] is not a murderer.  You use that, perhaps, in a colorful sense.  But you understand the criminal justice system and who does what and you understand, based upon your comments to me, my role to make decisions for better or for worse.

The court also noted that White would have become at least "a little bit familiar" with criminal trials, given that he had participated as a defendant in at least two criminal trials, including one resulting in an acquittal on a charge alleging a violation of the same statute as the charge in the underlying case here.  Earlier in the hearing, the court clarified that it could not "accept" the examiner's informal opinion as to White's competency, in effect reaffirming its earlier ruling that the opinion was inadmissible and clarifying the court's position that it would place no weight on the opinion itself.

¶19    On the day of trial, White appeared in person in court, but said that he did so only to deliver a letter that he had composed to the court which demanded that he again be evaluated for competency on an inpatient basis during a 30-day commitment to a mental health institution.  The court reminded White that, though it "accept[ed] that [White] had mental health difficulties," the court had found him competent.

---

> I can tell from the storehouse of knowledge that you keep in your head that you are not an un-bright fellow.  I can tell by the way that you think about appropriate examples of how to quiz me that you are a bright man.

Explaining the "quiz me" reference, White had asked the court whether Charles Manson, Saddam Hussein, Adolf Hitler, and John Wayne Gacy were "normal," "rational," or "sick" people.

¶20 White asked to be "excused" from being present during the trial. The court explained to White that he had a constitutional right to be present and that failing to exercise that right would be disadvantageous to his defense. White persisted in his request to leave and he was removed from the courtroom.

¶21 The court proceeded to empanel a jury and a trial was held. The State presented testimony from two correctional officers. The jury reached a guilty verdict. White appeals.

## DISCUSSION

¶22 White argues that the circuit court violated his right to due process and WIS. STAT. § 971.14 in deciding that he was competent without the benefit of an admissible expert opinion. The State argues that the examiner's informal opinion that White was competent qualified as an opinion under the requirements of § 971.14(3), even though the ultimate conclusion was not rendered to a reasonable degree of certainty. The State further argues that interpreting § 971.14 to require an expert opinion to a particular level of certainty would "offend[] principles of statutory construction."

¶23 We conclude that, in these circumstances, WIS. STAT. § 971.14 does not require a circuit court resolving a competency issue to rely on an ultimate conclusion from an examiner that reaches a particular level of certainty and that

the court here did not err in failing to order additional examinations.[7] Before explaining these conclusions further and addressing White's arguments to the contrary, we summarize pertinent standards.

*Legal Standards*

¶24    Although determinations of competency to stand trial involve the application of law to facts, these determinations are "functionally factual inquiries." *See **State v. Byrge***, 2000 WI 101, ¶¶33, 45, 237 Wis. 2d 197, 614 N.W.2d 477. We uphold a circuit court's determination of a defendant's competency unless it is clearly erroneous. *See **id.***, ¶45. In the context of competency to stand trial, the determination is clearly erroneous only if it is "'totally unsupported by the facts apparent in the record.'" *See **State v. Garfoot***, 207 Wis. 2d 214, 224-25, 558 N.W.2d 626 (1997) (quoted source omitted).[8]

---

[7] The State separately makes forfeiture arguments, but we do not address these in detail. Explaining further, the State argues that White forfeited the ability to argue on appeal that the circuit court erred in following WIS. STAT. § 971.14 procedures because he failed to timely object to the court's approach. We assume without deciding that White preserved the issue he raises on appeal, taking into account the following. On the day of trial, but before the trial began, White disputed the court's ability to make a determination regarding White's competency, particularly given the court's decision not to "accept the doctor's opinion." Although the court had already rendered a ruling on competency, the court was presented with an objection that is at least conceptually similar to White's position on appeal and at a time when the court could have considered reopening the issue. Further, the issue raised by White implicates well-established constitutional rights to due process, which could justify overlooking potential forfeiture. *See **Byrge***, 237 Wis. 2d 197, ¶27 ("Defendants who are tried and convicted while legally incompetent are deprived of a due process right to a fair trial.").

[8] As we explain below, we understand White's argument to focus on the proper interpretation of WIS. STAT. § 971.14, and that he does not make a direct challenge to the sufficiency of the evidence to sustain the circuit court's decision. Nonetheless, we include the deferential standard to sustaining the circuit court's competency ruling because it is relevant to our analysis.

(continued)

11

¶25    Thus, for example, in *Garfoot* our supreme court held that the circuit court's "decision that the State failed to meet its burden of proof" by the greater weight of the credible evidence "was not clearly erroneous." *See Garfoot*, 207 Wis. 2d at 227-28 (The circuit "court was faced with testimony from one expert that Garfoot was not competent and testimony from another expert that Garfoot was only marginally competent" and the "court was in the best position to determine if the State's evidence was more convincing than the evidence presented by Garfoot.").

¶26    However, as noted, we do not understand White to challenge the evidentiary basis for the court's determination. Rather, White argues that the circuit court failed to properly follow the procedures in WIS. STAT. § 971.14. We review the interpretation and application of § 971.14 de novo. *See Kieninger v. Crown Equip. Corp.*, 2019 WI 27, ¶12, 386 Wis. 2d 1, 924 N.W.2d 172.

---

While on the topic of the standard of review for competency decisions, the formulation of the clearly erroneous standard articulated in *Garfoot* remains good law, *see State v. Garfoot*, 207 Wis. 2d 214, 558 N.W.2d 626 (1997), but we pause to make the following further observations. In *Byrge*, our supreme court refers to the *Garfoot* standard as applying a "clear error" analysis, but does not explicitly reaffirm the "totally unsupported" formulation. *See generally Byrge*, 237 Wis. 2d 197. Later, in *State v. Smith*, 2016 WI 23, 367 Wis. 2d 483, 878 N.W.2d 135, three justices interpreted *Garfoot* as adopting a clear error standard "particularized to competency determinations" and reaffirmed the "totally unsupported" formulation of that standard. *See Smith*, 367 Wis. 2d 483, ¶¶27-29, 49 (lead opinion). But this position failed to garner the support of a majority. *See id.*, ¶59 (explaining that one justice did not participate); *id.*, ¶61 (Ziegler, J., concurring) (ruling that it was unnecessary in that case to "decide the question of the proper formulation of the clearly erroneous standard in this specific context" of determining competency to stand trial); *id.*, ¶¶67-68, 138 (Abrahamson, J., dissenting) ("'A finding is clearly erroneous when although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed'"; "findings of fact are clearly erroneous when 'they are against the great weight and clear preponderance of the evidence'" (quoted sources omitted)).

¶27     Constitutional and statutory law provides that no person shall be tried and convicted of a crime while incompetent. *Byrge*, 237 Wis. 2d 197, ¶¶26-27. Under WIS. STAT. § 971.13(1), "[n]o person who lacks substantial mental capacity to understand the proceedings or assist in his or her own defense may be tried, convicted or sentenced for the commission of an offense so long as the incapacity endures." *See also Byrge*, 237 Wis. 2d 197, ¶¶27-28 (explaining that § 971.13(1) codifies the due process test from *Dusky v. United States*, 362 U.S. 402 (1960) (per curiam)).

¶28     WISCONSIN STAT. § 971.14 lays out the procedures to be followed "whenever there is reason to doubt a defendant's competency to proceed." *See* § 971.14(1r). Provided that the circuit court has found probable cause that the defendant committed the offense charged, *see* § 971.14(1r)(b)-(c), the court "shall appoint one or more examiners having the specialized knowledge determined by the court to be appropriate to examine and report upon the condition of the defendant." Sec. 971.14(2)(a). The court may determine that a proper evaluation requires the court to commit the defendant "to a suitable mental health facility" for an "inpatient examination" or order that the defendant be "examined by [a] department [of health services] or a department facility" "on an inpatient or outpatient basis." Sec. 971.14(a)-(am); *see also* § 971.14(2)(c) (inpatient examinations may last up to 15 days with potential for only one 15-day extension; outpatient examinations to last no more than 30 days). The defendant and the prosecutor may each make their own arrangements to have the defendant examined by additional experts. Sec. 971.14(2)(g); *see also* § 971.14(4)(b) (allowing prosecutor and defendant to present evidence on the issue of competency).

¶29    Continuing with pertinent procedures, the court-appointed examiner "shall personally observe and examine the defendant and shall have access to his or her past or present treatment records." WIS. STAT. § 971.14(2)(e); *see also* *Garfoot*, 207 Wis. 2d at 227 ("[E]xpert testimony regarding a particular defendant's mental capabilities is necessary" for the reason that "the determination of competence is an individualized, fact-specific decision."). The examiner must then prepare and submit to the court "a written report which shall include," in pertinent part, the following:

> **(b)** The clinical findings of the examiner.
>
> **(c)** *The examiner's opinion regarding the defendant's present mental capacity to understand the proceedings and assist in his or her defense.*
>
> ….
>
> **(e)** The facts and reasoning, in reasonable detail, upon which the findings and opinions under pars. (b) to (dm) are based.

Sec. 971.14(3) (emphasis added). Thus, one requirement is that the report contain the examiner's ultimate conclusion regarding whether the elements of competency under WIS. STAT. § 971.13 (and the constitutionally based "*Dusky* standard") are met. This is evident in light of how the examiner's "opinion" in § 971.14(3)(c) is required separately, that is, in addition to, the requirements that the report contain the examiner's particular "clinical findings" and detailed "facts and reasoning" in § 971.14(3)(b) and (e).

¶30    Under WIS. STAT. § 971.14(4)(b), the circuit court "shall hold an evidentiary hearing on the issue," unless the prosecutor, the defendant, and (if applicable) defense counsel "waive their respective opportunities to present" evidence in addition to the examiner's report. "At the commencement of the

14

hearing, the judge shall ask the defendant whether he or she claims to be competent or incompetent." Sec. 971.14(4)(b). Pertinent here, "[i]f the defendant stands mute or claims to be incompetent, the defendant shall be found incompetent unless the state proves by the greater weight of the credible evidence that the defendant is competent." *Id.* If the court, after considering the evidence, "determines that the defendant is competent, the criminal proceeding shall be resumed." *See* § 971.14(4)(c).

¶31    As is evident in this last provision, "the inquiry whether a defendant is competent to stand trial is a judicial, not a medical, determination." *See State v. Smith*, 2016 WI 23, ¶37, 367 Wis. 2d 483, 878 N.W.2d 135; *see also Byrge*, 237 Wis. 2d 197, ¶48 & n.21 ("'Competency is a judicial rather than a medical determination.'" (quoting Judicial Council Committee Note, 1981, WIS. STAT. § 971.13(1)). As our supreme court has further explained:

> The aims of a competency hearing are modest, seeking to verify that the defendant can satisfy the understand-and-assist test. *See* [*Godinez v. Moran*, 509 U.S. 389, 402 (1993)]. The hearing need not establish a psychiatric classification of the defendant's condition. *Id.* Section 971.13(1) contemplates a judicial, not a clinical, inquiry, and our courts treat competency to stand trial as a legal standard, not a medical determination. *See* [*State ex rel. Haskins v. County Ct. of Dodge Cnty.*, 62 Wis. 2d 250, 265, 214 N.W.2d 575 (1974)]. Elaborate psychiatric evaluations sometimes introduce a clinical diagnosis that may not speak to competency to proceed. *Id.* at 264-65. A history of irrational behavior and prior medical opinions about a defendant's condition, like a defendant's demeanor, can serve as indicia in the competency determination. [*Drope v. Missouri*, 420 U.S. 162, 180 (1975)] But clinical reports occasionally state that a defendant is incompetent "when what really was meant was merely that the defendant had some mental illness which required treatment." *Haskins*, 62 Wis. 2d at 265.

*Byrge*, 237 Wis. 2d 197, ¶48 (footnote omitted).

¶32    To recap, the required evidence before a circuit court weighing competency will include at least one expert report as contemplated by WIS. STAT. § 971.14(2)-(3).  But the court may also take into consideration all information that is provided by the examiner, as well as the testimony of other witness and the court's own observations of and interactions with the defendant.  *See **Smith***, 367 Wis. 2d 483, ¶¶51, 53, 60 (upholding postconviction court's finding of competency based on testimony of trial counsel and defendant's colloquies with trial court); *see also **Garfoot***, 207 Wis. 2d at 224 (circuit court's competency determination "'must necessarily rest to a large extent upon the judgment and experience of the trial judge and his [or her] own observation of the defendant'" (quoted source omitted)).

*Analysis*

¶33    The issue raised by White boils down to whether WIS. STAT. § 971.14(3)(c) required the circuit court to order additional examinations of White until an examiner could reach an ultimate conclusion to a reasonable degree of professional certainty.  Put differently, the issue is whether a circuit court can proceed to a proper competency determination even if the "examiner's opinion regarding the defendant's present mental capacity to understand the proceedings and assist in his or her defense" required by § 971.14(3)(c) does not include an ultimate conclusion stated to a reasonable degree of professional certainty.  In addressing the issue, we assume without deciding that the court properly ruled that, as an evidentiary matter, the examiner's ultimate conclusion regarding competency was inadmissible, with the result that the court placed no weight on

16

the ultimate conclusion in itself.[9]  Although the procedures of § 971.14 are closely related to due process rights, we now briefly explain why the constitutional issue as framed by White is primarily one of statutory interpretation.

¶34    White may intend to argue that, if WIS. STAT. § 971.14 is construed so that circuit courts do not need an ultimate conclusion of at least one examiner rendered to a reasonable degree of professional certainty, then the statute unconstitutionally infringes on due process rights.  If intended as an argument, however, it is undeveloped in light of the steep burden that White would face in making it.  *See **Medina v. California***, 505 U.S. 437, 445 (1992) (a state-imposed criminal procedure is "'not subject to proscription under the Due Process Clause unless it offends some principle of justice so rooted in the traditions and conscience of our people as to be ranked as fundamental'" (quoted source omitted)).  No doubt, the right to be tried only when one is competent is fundamental.  But White does not explain how the failure of § 971.14 to mandate additional examinations until an ultimate conclusion to a reasonable degree of professional certainty is obtained from an expert is sufficiently rooted in the nation's traditions to render the statute unconstitutional for failure to require that particular form of evidence.

¶35    What remains are arguments of statutory interpretation.

---

[9] Based on this assumption, we need not address the State's argument that the examiner's lack of certainty to a reasonable professional degree related to the evidentiary weight of the ultimate opinion and not its admissibility, which if true would undermine White's position that the requirement of an "opinion" under WIS. STAT. § 971.14(3)(c) cannot be satisfied without an admissible ultimate conclusion by an examiner.

Separately, we note for context that the only part of competency proceedings that is exempt from the applicability of the rules of evidence is the determination of probable cause under WIS. STAT. § 971.14(1r)(c).  *See* WIS. STAT. § 911.01(2), (4)(c).

¶36 "Statutory language is given its common, ordinary, and accepted meaning, except that technical or specially-defined words or phrases are given their technical or special definitional meaning." *State ex rel. Kalal v. Circuit Ct. for Dane Cnty.*, 2004 WI 58, ¶45, 271 Wis. 2d 633, 681 N.W.2d 110. Further, statutes are interpreted to avoid absurd or unreasonable results. *State v. West*, 2011 WI 83, ¶53, 336 Wis. 2d 578, 800 N.W.2d 929. The "scope, context, structure, and purpose" of a statute, as reflected in its text and the text of closely related statutes, are also relevant to its plain-meaning, *see State v. Williams*, 2014 WI 64, ¶17, 355 Wis. 2d 581, 852 N.W.2d 467 (citing *Kalal*, 271 Wis. 2d 633, ¶¶45-46, 49), and "a plain-meaning interpretation cannot contravene a textually or contextually manifest … purpose," *see Kalal*, 271 Wis. 2d 633, ¶49.

¶37 White acknowledges that WIS. STAT. § 971.14 does not explicitly preclude a circuit court from addressing competency unless the examiner provides an ultimate conclusion that is reached to a particular level of certainty. This is a necessary concession. Section 971.14(3)(c) specifically requires only that the examiner's written report contain the "examiner's opinion regarding the defendant's present mental capacity to understand the proceedings and assist in his or her defense," and contains no reference to a level of certainty or more generally a requirement that the "opinion" must be admissible under the rules of evidence.

¶38 White's contention is that interpreting WIS. STAT. § 971.14 to allow the circuit court to proceed without an ultimate conclusion reached to a reasonable degree of professional certainty would produce an absurd result that is equivalent to the court having never appointed an examiner at all. We disagree that § 971.14(3)(c) requires, in all cases, that an appointed examiner render an ultimate conclusion to a particular degree of certainty.

¶39     It is true that, as our supreme court has explained, WIS. STAT. § 971.14 "clearly recognizes the legislature's belief that psychiatric testimony is highly relevant" to determining whether a defendant is competent.  *See Haskins*, 62 Wis. 2d at 266.  As shown above, the statute requires the court to appoint an examiner if there is a reason to doubt competency, and the examiner must submit a written report that "include[s]" "[t]he examiner's opinion" regarding competency. *See* § 971.14(1r), (3)(c).

¶40     But to elevate to the level of a statutory requirement that an examiner must render an ultimate conclusion at a particular level of certainty would be unreasonable in light of the judicial nature of the determination.  *See* WIS. STAT. § 971.14(4)(c); *Byrge*, 237 Wis. 2d 197, ¶48 & n.21.  Indeed, as further illustrated by *Smith*, a circuit court is free to *completely reject* the opinion of one or more expert examiners, reached to a reasonable degree of professional certainty, when such a determination can be supported by other evidence.  *See Smith*, 367 Wis. 2d 483, ¶¶17, 52-55, 60.  It is difficult to see how the legislature could have intended an expert conclusion at a particular level of certainty as a requirement when a circuit court could, based on the preponderance of other information available to the court, treat an expert's conclusion as erroneous.

¶41     White's argument confuses the requirements of WIS. STAT. § 971.14(3) regarding the generation of examiner reports with the requirements of § 971.14(4) regarding the State's burden of proof.  Instead of imposing a requirement based on the level of certainty of an expert opinion, § 971.14 explicitly imposes the burden on the State to establish competency (when it is denied by the defendant) by a mere preponderance of evidence, based on *all* relevant evidence deemed credible by the circuit court.  *See* § 971.14(4).

¶42   Of course, the two subsections of the statute are related. In some cases, depending on the totality of the evidence, the absence of a reasonably certain expert opinion generated pursuant to WIS. STAT. § 971.14(3) could heavily influence a circuit court's determination of whether the State has met its burden pursuant to § 971.14(4). But the facts here illustrate how a court may have ample evidence to support a competency determination, regardless of the ultimate conclusion reached by the examiner or in the absence of a reasonably certain ultimate conclusion.

¶43   The evidence here included the testimony of the examiner, which provided support for the circuit court's determination, even setting aside the examiner's informal opinion as the court did. White does not argue that the court erred in considering all of the relevant evidence contained in the report and testified to by the examiner. This included, in the words of the statute, "the specific records reviewed," the examiner's "clinical findings," and the "facts and reasoning … upon which the [examiner's] findings and opinions" are based. *See* WIS. STAT. § 971.14(3)(a)-(b), (e). As noted above, the examiner testified that White had a history of being evaluated for competency, which included occasions on which prior examiners opined that White was competent and, relatedly, malingering. *See **Byrge***, 237 Wis. 2d 197, ¶48 (noting that, among other things, "prior medical opinions about a defendant's condition … can serve as indicia in the competency determination" (citing ***Drope***, 420 U.S. at 180)). Similarly, the examiner observed that White's history of competency evaluations did not point to his having a "major mental illness" and opined that White's failure to cooperate with her examination was not due to his failure to understand her questioning. The examiner further testified that White's records contained "only small indications that he has reported self-harm behavior or suicidal ideations."

Consistent with the findings of her written report, the self-harm behavior or suicidal ideations were deemed by previous evaluators to be the results of White's "boredom" and desire to manipulate staff, noting that incidents of self-harm reported by White turned out to be "unfounded."

¶44    Further, the evidence included the circuit court's multiple opportunities to observe and interact with White.  *See **Garfoot***, 207 Wis. 2d at 224 (competency determinations "'must necessarily rest to a large extent upon … [the circuit court's] own observation of the defendant'" (quoted source omitted)). Based on these observations and interactions, the court found that White was an intelligent, articulate, and broadly knowledgeable person who had prior experience in the criminal justice system and who was oriented as to time and place.  Implied in these findings was the further finding that White's more outlandish references to deceased famous people, made to the court and the examiner, were examples of malingering.  White does not make the specific argument that a finding was clearly erroneous because it lacked support in the record.

¶45    White notes that, in cases in which the parties waive the right to present evidence, the circuit court "shall promptly determine the defendant's competency … on the basis of" the examiner's report.  WIS. STAT. § 971.14(4)(b). Based on this language, White contends that the statute "anticipates the use of the expert report to determine competency."  But paragraph (b) merely reinforces a point noted above:  the legislature intends that circuit courts make competency determinations with the benefit of information provided by at least one expert. White fails to show that § 971.14(4)(b) informs how the court must weigh

particular aspects of an examiner's report, or that it provides meaningful context for the interpretation of the "opinion" requirement in § 971.14(3)(c).[10]

¶46 White argues that interpreting WIS. STAT. § 971.14 to allow a competency determination in any case in which the examiner has not stated an ultimate conclusion to a reasonable degree of professional certainty would lead absurd results. He contends that this would be equivalent to a circuit court ruling on competency without appointing an examiner at all. We disagree. The circumstances here illustrate the point. As noted, the examiner's report provided the circuit court with findings that included descriptions of White's past competency evaluations and the court also had several exchanges with White that could be reasonably interpreted to have demonstrated White's ability to understand criminal proceedings and aid in his defense.

¶47 White notes that in **State v. Green**, we contrasted the requirement that the examiner's report include an opinion on competency with the less strict requirement that there be an opinion as to whether the defendant needs medication or treatment. *See* **State v. Green**, 2021 WI App 18, ¶¶49-50, 396 Wis. 2d 658, 957 N.W.2d 583, *aff'd in part*, 2022 WI 30, 401 Wis. 2d 542, 973 N.W.2d 770; WIS. STAT. § 971.14(3)(c), (dm). The examiner's opinion on medication is required

---

[10] To be clear, White does not argue that he and the State both "waive[d] their respective opportunities to present other evidence on the issue." *See* WIS. STAT. § 971.14(4)(b); **Wegner v. West Bend Mut. Ins. Co.**, 2007 WI App 18, ¶25, 298 Wis. 2d 420, 728 N.W.2d 30 ("Waiver is the intentional relinquishment of a right, either expressly or by conduct inconsistent with an intent to enforce that right."). Neither party objected to the circuit court holding a hearing as directed by statute "[i]n the absence of these waivers," § 971.14(4)(b). And, both parties made references to evidence, even beyond the additional opportunity for the circuit court to observe and interact with White. Specifically, White asserted as fact that he was mentally ill based on his allegedly receiving social insurance benefits and the State directed the court's attention to White's criminal history.

only "if sufficient information is available … to reach an opinion." Sec. 971.14(3)(dm). White may mean to suggest that this demonstrates that in the context of a determination regarding competency the legislature could have, but deliberately chose not to, permit examiners to omit from their reports ultimate conclusions stated to a reasonable degree of professional certainty as a result of insufficient information. However, this just recycles the same argument that we reject above: the argument that an examiner's failure to include an ultimate conclusion stated to a reasonable degree of professional certainty is equivalent to failure to provide the court with professionally informed data. Put another way, the language of § 971.14 does not tie the requirement of a competency "opinion" to a particular level of certainty. Indeed, the absence of a qualifier relating to the potential for insufficient information suggests that the legislature intended for examiners to reach opinions to the best of their abilities, even if the information available was insufficient to form an ultimate conclusion stated to a reasonable degree of professional certainty.

¶48 As part of his interpretation of WIS. STAT. § 971.14, White argues that, when an ultimate conclusion stated to a reasonable degree of professional certainty is lacking, the circuit court should order the appointment of another examiner and potentially have the subject examined on an inpatient basis (i.e., "committed to a suitable mental health facility") or order the department of health services to conduct either inpatient (at a department facility) or outpatient (in a locked unit or jail) examination. *See* § 971.14(2)(a), (am), (c) (court may appoint more than one examiner and determine that inpatient examination is necessary or order department of health services to determine how to examine competency, with examinations lasting no longer than 15 or 30 days). The logical consequence of White's argument would be that WIS. STAT. § 971.14 requires a court to order

23

new evaluations, one after another, until an examiner is able to provide an ultimate conclusion stated to a reasonable degree of professional certainty, regardless of the other relevant evidence available to the court. Even beyond our earlier point that the evidence to sustain a finding of competency was sufficient here, another problem with this argument is that the decision whether to order additional competency evaluations is left to the sound discretion of the circuit court. *See State v. Meeks*, 2002 WI App 65, ¶¶44-46, 251 Wis. 2d 361, 643 N.W.2d 526, *rev'd on other grounds*, 2003 WI 104, 263 Wis. 2d 794, 666 N.W.2d 859.[11] Here, the court did not appear to explicitly contemplate at the competency hearing that it would order further evaluations of White. But at the prior hearing, in discussing with the prosecutor the topic of the examiner's competency opinion, the court said that it "didn't understand [the examiner] to think that any more evaluation was

---

[11] To the extent that our supreme court's reversal of *Meeks* deprived that decision of all precedential value, we would still consider persuasive the discussion in *Meeks* regarding the issue not specifically repudiated by our supreme court. *See State v. Meeks*, 2002 WI App 65, ¶¶44-46, 251 Wis. 2d 361, 643 N.W.2d 526; *see also Barricade Flasher Serv., Inc. v. Wind Lake Auto Parts, Inc.*, 2011 WI App 162, ¶9, 338 Wis. 2d 144, 807 N.W.2d 697 (applying, as persuasive but non-controlling precedent, reasoning from court of appeals opinion overruled by supreme court on other grounds though supreme court did not expressly identify for preservation any portion of court of appeals opinion); *Blum v. 1st Auto & Cas. Ins. Co.*, 2010 WI 78, ¶44, 326 Wis. 2d 729, 786 N.W.2d 78 (the "'general rule is that holdings not specifically *reversed* on appeal retain precedential value'" (emphasis added; quoted source omitted)); *State v. Jackson*, 2011 WI App 63, ¶15 n.3, 333 Wis. 2d 665, 799 N.W.2d 461 ("'[o]nly when a case is *overruled* does [the court of appeals opinion] lose all of its precedential value'" (quoting *State v. Harris*, 2010 WI 79, ¶34 n.12, 326 Wis. 2d 685, 786 N.W.2d 409) (emphasis added)); *but see Talley v. Mustafa*, 2018 WI 47, ¶14 n.9, 381 Wis. 2d 393, 911 N.W.2d 55 (stating that its *reversal* of court of appeals removed all precedential value from its opinion (citing *Blum*, 326 Wis. 2d 729, ¶42 ("when the supreme court *overrules* a court of appeals decision, the court of appeals decision no longer possesses any precedential value, unless this court expressly states otherwise" (emphasis added)))).

24

going to be helpful."[12] The court also said that "competency proceedings are not a venue for playing games with the system," underscoring the court's finding based on all of the available evidence that White was malingering. In light of this additional background and the record before it, the court did not erroneously exercise its discretion or clearly err in implicitly deciding that further examination would be unhelpful. The court could have considered the examiner's inability to reach an ultimate conclusion stated to a reasonable degree of professional certainty as grounds to exercise its discretion in favor of ordering further evaluations. But, given the court's extensive interactions with White and the examiner's testimony regarding White's history of such evaluations consistently pointing to his feigning incompetence, the court could reasonably conclude that further evaluation in this case would not offer new insights.

¶49 White alludes to the Due Process Clause, but he fails to persuade us that there was a constitutional violation. He contends that the circuit court's decision to proceed to a competency determination in the absence of an examiner's ultimate conclusion stated to a reasonable degree of professional certainty constituted a "failure to observe procedures adequate to protect [his] right not to be tried or convicted while incompetent." *See **Drope***, 420 U.S. at 172. However, the requirement "that a criminal defendant be competent has a modest aim," which is "to ensure that [the defendant] has the capacity to understand the proceedings and to assist counsel." *See **Moran***, 509 U.S. at 402; *see also* WIS.

---

[12] It is true that, after summarizing why the examiner could not reach an ultimate conclusion to a reasonable degree of professional certainty, the report stated that "it might be prudent to continue examination on an inpatient basis." At the same time, the report emphasized White's lack of cooperation both in the examination underlying this appeal and in prior examinations.

STAT. § 971.13(1). The legislature is free to adopt "more elaborate" standards, but is not required to do so by the Due Process Clause. *See Moran*, 509 U.S. at 402. We have explained why we conclude that the legislature has not adopted the particular more elaborate standard that White argues in this appeal. Further, as noted above, White does not develop an argument that such a standard is imposed through operation of the Due Process Clause.

## CONCLUSION

¶50    For all of these reasons, the judgment of conviction is affirmed.

*By the Court*.—Judgment affirmed.

Not recommended for publication in the official reports.